[No. 29408.  *En Banc.*  February 24, 1945.]

RICHARD O. HAYNES *et al., Appellants,* v. JOHN DAVIS & COMPANY, *Respondent.*[1]

*Evans, McLaren & Lane,* for appellants.

*Weter, Roberts & Shefelman* and *James Gay,* for respondent.

[1]Reported in 156 P. (2d) 659.

BEALS, C. J.—Plaintiffs, Richard O. Haynes and Maurine Haynes, his wife, instituted this action against W. A. Watts and Gladys M. Watts, his wife, and John Davis & Company, a corporation, as defendants, alleging in their complaint that they, being the owners of a tract of real estate in King county, during the spring of 1943, agreed in writing with defendants Watts to sell the property to defendants, who agreed to purchase it for $18,500; that defendants Watts then deposited with defendant John Davis & Company, as plaintiffs' agent, the sum of one thousand dollars as an earnest money deposit and as part payment of the purchase price; that preliminary steps having been accomplished, defendants Watts were called on to pay the balance of the purchase price and that they refused to do so; that by their act the one thousand dollars deposited with defendant John Davis & Company (hereinafter referred to as Davis or as respondent) was forfeited to plaintiffs; that Davis, however, refused to turn the money over to plaintiffs, but kept the same under some claim of right. Plaintiffs attached to their complaint a copy of the agreement between the parties, which is admitted to be correct.

Plaintiffs prayed for judgment declaring that the one thousand dollars had been forfeited to plaintiffs and plaintiffs were entitled to the same, free and clear from all claim on the part of defendants.

Defendants Watts filed an answer and cross-complaint, asking that the one thousand dollars be returned to them. Defendant Davis filed its answer and cross-complaint, alleging that the contract between plaintiffs and defendants Watts, to which agreement defendant Davis was a party, contained the following paragraph:

"It is agreed that if the title to said property is not marketable, or can not be made marketable in 30 days from receipt of written notice of any defects, or if the owner does not approve of the above sale, this agreement is void, and the earnest money herein receipted for shall be refunded, but if the title of said property is marketable, and the above sale is approved by the owner, and the purchaser refuses or neglects to comply with any of the conditions of this sale, then the earnest money herein receipted for shall be for-

feited to John Davis & Company to the amount of their regular commission, and balance, if any, to the owner of the property as liquidated damages. It is understood and agreed that the agent is in no wise responsible for the delivery of this title,"

and that, according to the terms of the paragraph referred to, $925 of the one thousand dollars deposited belonged to defendant Davis, the balance of seventy-five dollars belonging to plaintiffs.

It was admitted by all parties that the agreement contained the paragraph quoted.

The issues having been completed by plaintiffs' reply, the action was tried to the court sitting without a jury, resulting in findings of fact and conclusions of law against defendants Watts and in favor of defendant Davis, and allowing plaintiffs no more than seventy-five dollars of the one thousand dollars deposited.

Judgment having been entered in accordance with the findings and conclusions, plaintiffs have appealed. Defendants Watts have not appealed from the judgment, the only parties before this court being appellants Haynes and respondent Davis.

There is no disputed question of fact in the case, appellant not attacking the findings but assigning error only upon the entry of judgment in respondent's favor awarding respondent any portion of the one thousand dollars deposited, and upon the court's refusal to enter judgment awarding all of the deposit to appellant.

The agreement above referred to was prepared as an earnest money receipt, signed by respondent as agent. Under the receipt appears: "I hereby agree to purchase the property on the above terms. [Signed] W. A. Watts, Purchaser." Below appears:

"We, the owners of the above mentioned property, approve the above sale, and will pay 5% commission upon consummation of deal. Seller to be given full release from mortgage agreement.

[Signed] Richard O. Haynes
[Signed] Maurine N. Haynes"

Appellants' theory is that respondent holds the entire forfeited deposit as appellants' agent; that the claim respondent makes pursuant to the terms of the forfeiture clause in the agreement is a claim for a commission and as such is void, as within the bar of the statute of frauds.

Rem. Rev. Stat., § 5825 [P. C. § 7745], reads in part as follows:

"In the following cases specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

■ By the paragraph of the agreement signed by appellants, they agreed to pay a five per cent commission upon consummation of the sale. The sale never having been consummated, no commission has been earned, within the terms of the portion of the agreement last referred to.

In the case of *Cadigan v. Crabtree,* 179 Mass. 474, 61 N. E. 37, 88 Am. St. 397, 55 L. R. A. 77, the supreme judicial court of Massachusetts, in discussing the nature of a real estate broker's commission, said:

"The very essence of a brokerage commission is that it is dependent upon success and that it is in no way dependent upon, or affected by, the amount of work done by the broker. A brokerage commission is earned if the broker, without devoting much, or any, time to hunting up a customer, succeeds in procuring one; and it is equally true, on the other hand, not only that no commission is earned if a broker is not successful, but a broker is not entitled to any compensation, no matter how much time he has devoted to finding a customer, provided a customer is not found. . . . The promise to pay a brokerage commission if a customer is found to purchase at a stated price is not the ordinary employment of labor, but is more in the nature of an offer, namely, an offer to pay a commission if a person is produced who buys at the price named; and, like any other offer, it can be withdrawn at any time, without regard to the fact that work has been done by a person in reliance on it, provided the work done has not brought the person

within the terms of the offer. · A broker who has not been successful in procuring a customer for his principal is never entitled to recover on a *quantum meruit* for work done."

■ This court has recognized the principle that a broker is entitled to a commission when he has produced a purchaser who is ready, able, and willing to buy upon the terms specified.

The evidence in the case at bar indicates that a forfeiture clause similar to that above quoted is often found in earnest-money receipts used within this state, although it also appears that during recent years the contracts have often provided that a forfeited earnest money payment shall be divided equally between the seller and the agent.

Such a situation differs from that which arises after a sale has been consummated, or in cases where a broker has procured a purchaser ready, able, and willing to buy at the terms offered, and the seller refuses to complete the sale, or where the purchaser refuses to purchase and the seller enforces specific performance. In these instances the broker's right, if any, to recover against the seller is properly a recovery by way of a commission.

In the case at bar, an entirely different situation is presented. Respondent, the broker, procured a purchaser who made a down payment in accepting the terms offered in the earnest money receipt prepared and signed by respondent, which offer appellants accepted in writing. The purchaser then refused to complete the deal, and admittedly his down payment has been forfeited. No other question was presented to the trial court or is presented here.

Counsel for appellants have cited no authority in which the exact problem here presented is discussed. Respondent relies upon the case of *Lawler v. Armstrong*, 53 Wash. 664, 102 Pac. 775, which was an action by a broker to recover a commission from the seller. As in the case at bar, the broker signed an earnest-money receipt acknowledging the payment of five hundred dollars on account of the purchase of a tract of real estate. The purchaser, in writing, agreed to buy the property on the terms mentioned, and the owners executed the following:

" 'We approve the above sale and agree to pay George Lawler $750 in case sale is consummated or ⅓ of earnest money in case same is forfeited, and covenant that we are the owners of the above described property in fee simple.' "

Thereafter the purchaser refused to accept the title offered, and the owners brought suit for specific performance, recovering a judgment against the defendants. It further appeared that the owners had settled the judgment with the purchaser, and that a sale of the property had been consummated. This court reversed the judgment of the superior court in favor of the defendant owner and held that the broker was entitled to recover his commission. The case is not directly in point here, but in the course of the opinion the court said:

"The contract shows that $500 had been paid, and the evidence is uncontradicted that the appellant had paid that sum as earnest money to the respondents. Upon the failure of McDonald [the purchaser] to pay the unpaid purchase price and accept the title, either of two courses was available to the respondents; (1) to forfeit the $500 earnest money, retain two-thirds and pay one-third to the appellant. . . . It is true that the contract called for a consummated sale for cash before the right to a commission arose, but it is likewise true that the appellant had an equity in the contract and a one-third interest in the earnest money, subject to the right in the respondents to enforce the contract or forfeit the earnest money."

It would seem that the above quotation states a correct principle, and that pursuant to a clause providing for forfeiture of earnest money and the apportionment of any forfeited deposit between the owner and broker, the latter has an interest in the earnest money to the extent provided in the agreement.

Appellants rely upon the cases of *Tripple v. Littlefield*, 46 Wash. 156, 89 Pac. 493, and *Wright v. Merritt Realty Co.*, 148 Wash. 380, 268 Pac. 873. These actions were instituted by prospective purchasers against brokers to recover earnest moneys paid by the purchasers to the brokers. In each instance the forfeiture clauses in the earnest money receipts provided that the down payment should be for-

feited to the agents under certain contingencies, without specifying any apportionment between principal and agent. In each case the purchaser knew that the broker was acting for a disclosed principal. This court held in each case that, when earnest money is forfeited to an agent, it is forfeited to him as representative of his principal, and that in any action for the recovery of the money, the principal must be a party defendant.

In the instant case, the pro rata shares of the principal, on the one hand, and the broker, on the other, are defined by the terms of the earnest money receipt. The forfeiture clause expressly states the interest of the broker in the earnest money in the event of a forfeiture and the purchaser is no longer concerned with any question before this court, the only interested parties being the broker and the seller.

Had the earnest money receipt provided for an equal, or any other, division of the forfeited deposit between appellants and respondent, the broker's share would probably bear no relation whatever to the amount of the commission which would be due him in case of consummation of the sale. No authority has been called to our attention suggesting that such an agreement would for any reason have been invalid. The fact that, in the case at bar, the commission which appellants promised to pay upon consummation of the sale equals in amount (as shown by the evidence) the regular commission charged by respondent, is in some measure fortuitous. The evidence discloses that respondent's regular commission amounts to five per cent of the sale price. Had appellants agreed in writing to pay respondent a commission of more than five per cent upon consummation of the sale, respondent, in the event of forfeiture, could have claimed only five per cent of the sale price, pursuant to the paragraph of the agreement covering the matter of forfeiture above quoted.

The respective interests of the principal and agent in any forfeited earnest money payment may be apportioned in any way that the parties agree. The money could

be equally divided between them; one party might receive one third and the other two thirds; or the division might be made in any other proportion. The division agreed upon does not control in any manner the nature of either party's interest in the money. In the case at bar, the fact that respondent's interest is measured by its regular commission, no more makes his interest in the fund a commission than if the money were equally divided. Respondent's right to share in the forfeited deposit could only accrue in the event that he never became entitled to a commission. The apportionment agreed upon nowise altered the nature of the thing apportioned.

Appellants rely upon the case of *Realty Mart Corp. v. Standring,* 165 Wash. 21, 4 P. (2d) 1101, which was a suit by a broker to recover a commission. The contract between the parties did not comply with the statute of frauds, and it was held that the plaintiff could not recover.

The case of *Forland v. Boyum,* 53 Wash. 421, 102 Pac. 34, was also an action brought by a broker to recover a commission. In that case the title to the property proved defective, and no sale was ever consummated. This court held that the contract relied upon by the broker was void as within the bar of the statute of frauds. The action was one for the recovery of a commission and not for a share of the earnest money deposit. It appears that the purchaser had made a down payment of five hundred dollars, but what became of this money does not appear from the opinion. It may have been turned over to the seller or returned to the purchaser.

The case at bar is not a suit by a broker for a commission. The clause in the contract providing for the division of the earnest money deposit in the event of a forfeiture does not provide for the payment of a commission. The trial court properly held that respondent could introduce parol testimony to explain the phrase "regular commission." The subject matter of that portion of the contract is not within the statute of frauds. The parties defi-

nitely agreed as to the disposition of the earnest money in case of forfeiture, and they are bound by their agreement.

The judgment appealed from is affirmed.

MILLARD, ROBINSON, SIMPSON, JEFFERS, and GRADY, JJ., concur.

BLAKE, J. (dissenting)—The respondent was in no sense a principal to the earnest money contract. At most, it was merely a third-party beneficiary of an agreement between appellants and Watts. Had appellants signed the earnest money receipt without any qualification, respondent might very well maintain that it was a third-party beneficiary under the contract and entitled to the earnest money under the stipulation: "if . . . the purchaser refuses or neglects to comply with any of the conditions of this sale, then the earnest money . . . shall be forfeited to John Davis & Company."

But appellants, by the terms of their acceptance of Watts' offer, nullified that stipulation as follows: "We, the owners of the above mentioned property, approve the above sale, and *will pay* 5% commission *upon consummation of deal.*" (Italics mine.) The deal was never consummated.

In the light of the acceptance thus qualified, it seems clear to me that appellants never relinquished their right to the earnest money. I think the judgment should be reversed.

STEINERT and MALLERY, JJ., concur with BLAKE, J.