## No. 16,115.

WEHNER *v.* SCHRADER ET AL.

(205 P. [2d] 225)

Decided April 4, 1949.

Mr. DAVID BROFMAN, for plaintiff in error.

Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL, for defendants in error.

*In Department.*

MR. JUSTICE ALTER delivered the opinion of the court.

WILLIAM E. SCHRADER and Edythe M. Schrader brought an action against Jack Wehner to recover judgment in the sum of $500. The parties each filed a motion for summary judgment, and, after a hearing on said motions, judgment was entered in favor of plaintiffs and against defendant. Defendant seeks a reversal here by writ of error.

We will herein refer to the parties as plaintiffs and defendant as they appeared in the trial court.

In the first cause of action in the complaint it is alleged that defendant is indebted to plaintiffs in the sum of $500 for money had and received from one Burns on June 10, 1947, to be paid by defendant to plaintiffs, with interest thereon from June 10, 1947. In the second cause of action, plaintiffs allege that one Burns paid to defendant $500 on June 10, 1947, as consideration for an option to purchase certain real estate belonging to plaintiffs, the sale thereof to be consummated on or before August 10, 1947; that Burns failed to exercise his option through no fault of plaintiffs, and that the said sum of $500 was forfeited to plaintiffs by said Burns under the terms of the agreement in writing, a copy of which was attached to the complaint; that defendant has retained said $500 and has refused to pay the same to plaintiffs although requested so to do.

Defendant answered the first cause of action by a denial thereof.

As to the second cause of action, defendant admits that the $500 was received by him pursuant to the agreement, the pertinent parts of which are hereinafter set forth, and further alleged that under the terms of said agreement the $500 belonged to him.

For a further answer defendant alleged that, pursuant to said agreement, he was employed by plaintiffs for the purpose of finding a buyer for their property described in a certain agreement dated June 10, 1947, and that pursuant to said employment defendant did

find a purchaser who was ready, willing and able to purchase said premises, "and said $500 was obtained on account of commission due defendant for said services; and the consummation of said sale was defeated through no fault of the defendant."

The action grew out of a real-estate transaction wherein the plaintiffs were the owners, defendant was a real-estate broker, and one Edwin F. Burns was the prospective purchaser. The pertinent parts of the contract of purchase are as follows:

"Denver, Colorado, June 10, 1947

"Received of Edwin F. Burns hereinafter referred to as the Buyer, the sum of Five Hundred & No/100 Dollars ($500.00) *as part payment, *, * * for the following described real estate,* situate in the City and County of Denver and State of Colorado, to-wit: * * *

"The Buyer agrees to pay for said property the purchase price of Twelve Thousand & No/100 Dollars ($12,000.00) as follows: *Five Hundred & No/100 Dollars ($500.00), receipt of which is hereby acknowledged, and the balance as follows* Eleven Thousand Five Hundred & No/100 ($11,500.00) Dollars cash on transfer by Warranty Deed.

\* \* \*

"Provided the payment of the purchase price as above specified is made or tendered and the other conditions to be performed by the Buyer are so performed, the Owner, on or before the 10th day of August, 1947 agrees to deliver to the Buyer his heirs or assigns a good and sufficient warranty deed conveying said property free and clear of all liens and encumbrances whatsoever except the following:

\* \* \*

"The Owner and Buyer agree to pay an equal share of a reasonable fee to an attorney or firm for closing

services or said parties may designate their own attorney or attorneys for closing services.

\* \* \*

"Possession of said real estate and property shall be given to the Buyer on or before the 10th day of August, 1947. If property is occupied by a tenant, possession is subject to O.P.A. regulations.

"An abstract of title to said property certified to date at the Owner's cost shall be furnished the Buyer showing merchantable title in the Owner. In the event defects shall be found in the title which render the same unmerchantable, the Owner at the Owner's expense agrees to perfect the same, and in such event the Owner shall have a reasonable time not exceeding sixty (60) days (unless a further extension of time be mutually agreed upon in writing by Owner and Buyer) in which to render such title merchantable, and in the event said title is not rendered merchantable within such time, the part payment received this date shall be returned to the Buyer, and the abstract of title shall be returned to the Owner, and all parties hereto shall thereupon be released from all further obligations hereunder.

"Time is of the essence of this contract. In the event title is found to be merchantable or is rendered merchantable as herein provided and the Buyer fails to pay or tender the balance of the purchase price as herein provided, then the payment above receipted for may be retained by Jack Wehner, Agent, *as liquidated damages,* in which event all parties shall be released from *all obligations* hereunder.

\* \* \*'

Jack Wehner, Realtor, Agent
By L. M. Wert
Accepted and approved:
Edwin F. Burns
Buyer.

Accepted and approved:

Date 6/10/47

William E. Schrader, Jr.

by Edythe M. Schrader

Owner.

Edythe M. Schrader

Owner."

(Italics ours)

Written interrogatories and answers thereto disclosed that the purchaser, Edwin F. Burns, resided in Tucson, Arizona, and that he did not complete his contract of purchase owing to his inability to sell his house in Tucson, Arizona, which had been damaged by fire subsequent to the execution of the contract here in question. Further, that plaintiffs were at all times, to and including the 10th day of August, 1947, ready, able and willing to complete the sale in accordance with the terms of the contract in question, and that through no fault of theirs the sale was not made. It was stipulated that although plaintiffs delivered to the defendant an abstract of title to the property described in the contract, the abstract was never delivered by defendant to the prospective purchaser or his attorney, and the title was never found merchantable by the prospective purchaser.

Defendant's motion for summary judgment challenged the sufficiency of the complaint to raise a genuine issue as to any material fact, and plaintiffs' motion was based upon the ground that the complaint and answers to interrogatories disclosed that there was no issue of fact to be tried and that the plaintiffs were entitled to judgment as prayed in their complaint.

In his summary of argument defendant states: "There is no question that the broker in this case did not find a purchaser who was ready, willing and able to purchase the property. This is sustained by the fact that a forfeiture occurred. And the broker is not entitled to a *commission*. But he does not seek a commission, nor

does he make any demands upon the Defendants in Error."

Defendant contends that: "The issue is whether principals and their broker may enter into an agreement whereby the broker may retain the entire earnest money in the event of default by a prospective purchaser without fault of either the principals or the broker."

If defendant has correctly stated the issue, its solution is without difficulty, for the answer would clearly have to be in the affirmative. If the agreement here provided that upon forfeiture the down payment or earnest money should become the property of defendant or should be divided into equal or any other proportionate parts between the owner and the agent, there could be no question but what that would constitute a valid, enforcible contract between these two persons, and the courts would enforce the contract in accordance with its terms. *Haynes v. John Davis & Co.*, 22 Wash. (2d) 474, 156 P. (2d) 659. We do not, however, accept the issue as presented by defendant, but believe that it is whether the owners, the broker and the prospective purchaser *did* enter into an agreement whereby defendant was to retain the entire down payment or earnest money for his own use and enjoyment in event the prospective purchaser defaulted in his contractural obligations.

Defendant was plaintiffs' agent for the purpose of finding a purchaser ready, willing and able to complete the purchase of their property upon terms proposed by them, and his commission for services was not to be paid until the sale was consummated or defeated by the refusal or neglect of the owners to consummate the same upon the terms imposed on them in the listing. Defendant procured a purchaser who entered into the contract hereinabove summarized, and, as evidence of his good faith and *as part payment of the purchase price* for the listed property, paid to defendant the sum of $500, and defendant acknowledged this pay-

ment *as part of the purchase price and received the same as agent for plaintiffs.* It seems clear that if immediately upon the prospective purchaser making the down payment of $500 upon the purchase price of the property, the owners thereof had demanded this sum from defendant, the latter would have complied with the demand for defendant was their agent, and in all his transactions connected with the sale of this property he was accountable to his principals. Defendant would not have been entitled to retain the $500, or any other sum, as against the demands of his principals for he had not yet earned a commission, and no commission as a real-estate broker was due him until the sales transaction was completed in accordance with the agreement.

The contract was prepared by defendant, and if there are doubts and ambiguities therein, they must be construed in favor of his principals. It also should be remembered that defendant had no interest whatever in the property nor the sale thereof except as agent of the plaintiffs. He was to be paid his commission upon the consummation of the sale, and he submitted, and now seeks the enforcement of, a contract which, if carried out according to its terms and conditions, would entitle him to a commission of $600, and under his construction of the contract he would be entitled to $500 if the contract was not consummated, the $500, as the receipt disclosed, being *a part payment on the purchase price of the property.* The $500 in question was, as evidenced by the contract, to be retained by "Jack Wehner, Agent" as liquidated damages. If the contract had been a contract between the purchaser and Jack Wehner, the question of liquidated damages might arise, but as between plaintiffs and defendant there were, and could be, no liquidated damages because had the sale been consummated defendant would have been entitled to a fixed and easily determinable sum, i.e., his commission.

Defendant relies chiefly on the decision in *Haynes v. John Davis & Co., supra,* in support of his claim to the

down payment. However, therein the listing contract provided, inter alia: "It is agreed that if the title to said property is not marketable, or can not be made marketable in 30 days from receipt of written notice of any defects, or if the owner does not approve of the above sale, this agreement is void, and the earnest money herein receipted for shall be refunded, but if the title of said property is marketable, and the above sale is approved by the owner, and the purchaser refuses or neglects to comply with any of the conditions of this sale, *then the earnest money herein receipted for shall be forfeited to John Davis & Company to the amount of their regular commission, and balance, if any, to the owner of the property as liquidated damages.*" (Italics ours)

This provision in the contract clearly provided for the payment to John Davis & Company, not as agents, as in the instant case, but in their individual capacity, and the contract itself clearly expressed the agreement as to the division of the earnest money. The owners of the property and the real-estate broker were well within their legal rights in so providing the apportionment of the earnest money.

Summarizing, in the present case, defendant was plaintiffs' agent, and as such was a fiduciary accountable to his principals for all moneys received by him in the performance of his agency agreement. He was not the agent of the prospective purchaser and was not entitled to any compensation or damages, liquidated or unliquidated, from him for his efforts in the performance of the contract under which he now asserts a claim for $500. He himself designated that sum as a part payment upon the sale of plaintiffs' real estate, and he received it as agent for plaintiffs in the furtherance of his agreement in connection with that sale. We are mindful of the fact that the contract provided that "Jack Wehner, Agent" might retain the part payment in event the prospective purchaser failed to consummate his purchase of the property. It is conceded by defendant's attorney that if

the word "as" had preceded the word "Agent" so that the provision in the agreement would read that "Jack Wehner as Agent" should retain the $500 as liquidated damages, he would then be obligated to account to his principals for the same. In view of the fact that the agreement between plaintiffs and defendant was prepared by defendant, we are not disposed to base our decision on such a technicality.

As we understand defendant's contention, it is that he is entitled to retain the down payment for his sole and separate use because the agreement provides that in certain contingencies "then the payment above receipted for may be retained by Jack Wehner, Agent, as liquidated damages, in which event all parties shall be released from all obligations hereunder." Under the agreement the prospective purchaser acquired an exclusive right to purchase the property listed for a period of sixty days, and for this privilege paid the sum of $500. The damages were liquidated in that sum if the purchaser refused to consummate his contract. Furthermore it is readily discernible that there could be no "liquidated damages" so far as the defendant was concerned for his only damage resulted from a loss of commission, the amount of which was readily ascertainable and hence not liquid. Also there was no obligation upon plaintiffs' part requiring any release by "Jack Wehner, Agent" for they were not obligated to him until such time as he completed his contract by finding a purchaser ready, willing and able to purchase the property upon the terms and conditions specified. The prospective purchaser was under no obligation to Jack Wehner, but any obligation incurred by him was to Jack Wehner's principals, not to Jack Wehner, Agent; consequently the portion of the last paragraph pertaining to release from obligations is meaningless and wholly redundant. Defendant in this entire transaction acted in a representative and fiduciary capacity with known principals who are the plaintiffs herein, and any financial advantage accuring under the

contract by reason of the prospective purchaser's default inured to the benefit of the plaintiffs rather than their agent.

The judgment of the trial court is right, and, accordingly, is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE HAYS concur.